# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA ) ) ) ) Plaintiff, ) ) ) v. ) ) ) EES COKE BATTERY, LLC ) ) Defendant. ) ) | Case No. 2:22-cv-11191-GAD-CI<br><br>Judge Gershwin A. Drain<br><br>Magistrate Judge Ivy |

# UNITED STATES' REPLY BRIEF IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT ON LIABILITY

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................... 1

    I.    The 2014 Permit Change Proved A Major Modification ............................... 1

        A.  EES Coke Misstates the Burden Each Side Faces ........................................ 1

        B.  EES Coke Cannot Satisfy the Demand Growth Exclusion .......................... 2

            1.   The Permit change caused much of the pollution increase ...................... 2

            2.   The battery's pollution exceeded what it was capable of accommodating during the baseline period ........................................................................ 5

    II.   EES Coke Failed To Comply With Reporting Rules ....................................... 7

CONCLUSION ........................................................................................................ 7

## TABLE OF AUTHORITIES

**Cases**

*New York v. EPA*,
    413 F.3d 3 (D.C. Cir. 2005) .............................................................................. 2

*United States v. DTE Energy Co.*,
    845 F.3d 735 (6th Cir. 2017) ........................................................................ 2, 5

There is no dispute that EES Coke removed a limit from its state air permit ("Permit") and then increased its $SO_2$ pollution by nearly 80%. The company's own data and statements to the Michigan permitting agency prove its liability. No further discovery is needed to decide the issues, as further explained in the United States' brief opposing EES Coke's Rule 56(d) motion. And the company's briefing shows there is no dispute of facts, only a difference in how to apply the relevant law.

## ARGUMENT

**I.     The 2014 Permit Change Proved A Major Modification**

There are just two questions for the Court: (1) has the United States proved that the Permit change caused a significant portion of the undisputed pollution increase; and (2) has EES Coke proved that the demand growth exclusion exempts it from New Source Review applicability. In its initial brief, the United States showed that the increase was related to the change. *See* ECF No. 9 ("U.S. Br."), PageID.87-90. That showing means the United States has met its burden and EES Coke cannot, for the reasons discussed in the prior brief and Subsection B.1 below.

There are no material factual disputes on these questions. EES Coke challenges the legal conclusions the United States has proposed, but the facts themselves are known to both parties and undisputed.

**A.     EES Coke Misstates the Burden Each Side Faces**

The initial burden rests with the United States to prove the elements of the

claim, including that the Permit change caused a pollution increase. *See, e.g.*, Mich. Admin. Code R. 336.2901(t). The burden then shifts to EES Coke to exclude a sufficient portion of the increase to avoid triggering New Source Review.

EES Coke argues that the United States must *disprove* the elements of the demand growth exclusion. *See* ECF No. 29 ("Coke Br."), PageID.951-52. The regulations specifically put that burden on the source. *See* Mich. Admin. Code R. 336.2901(ee)(ii) ("the owner or operator . . . shall" exclude emissions satisfying the demand growth exclusion). Case law uniformly confirms that "it is the source's burden to prove . . . the demand-growth exclusion." *United States v. Ameren Missouri*, 9 F.4th 989, 1005 (8th Cir. 2021) (citing *New York v. EPA*, 413 F.3d 3, 33 (D.C. Cir. 2005); *United States v. DTE Energy Co.*, 845 F.3d 735, 737 (6th Cir. 2017)). And EES Coke's answer shows it understands the demand growth exclusion is an affirmative defense. *See* ECF No. 3, PageID.45 (Tenth Defense).

  **B.**   **EES Coke Cannot Satisfy the Demand Growth Exclusion**

    **1.**   **The Permit change caused much of the pollution increase**

The facts of the pollution increase are simple and undisputed. The Michigan Department of the Environment, Great Lakes, and Energy ("EGLE") revised the Permit to remove the underfire combustion limit at EES Coke's request.[1] Pollution

---

[1] Contrary to EES Coke's briefing, EPA is not attacking the Permit. While the *evidence* of the modification occurred in 2018 and later, the underlying change was

2

then increased significantly—for example, 1,233 tons over the baseline in 2018, with 573 tons directly related to burning more coke oven gas ("COG") at underfire than previously allowed. *See* U.S. Br., PageID.84. EES Coke does not challenge these facts, but blames the increased pollution on reduced COG demand from U.S. Steel and what it calls a "zero-sum game" for battery emissions.

Reality is more complicated than the company's new zero-sum game metaphor. The company now says that the Permit change increased combustion at underfire and decreased it at the flare—arguing, without citation, that this was the "very purpose of the Permit." *See* Coke Br., PageID.953. But the Permit application predicted that *both* underfire and flare combustion would increase, contrary to EES Coke's new claim that they always balance. *Compare* Coke Br., PageID.948 (Table 1) *with id*. PageID.957 ("If more COG is burned at the underfire, less COG (exactly the amount that increased at the underfire) is burned at the flare; and vice versa."). In reality, both increased by even more than predicted. Ex. 1, Galinsky Second Declaration ("Galinsky Dec.") ¶8.

As those actual increases illustrate, the zero-sum game metaphor is too

---

the Permit revision. So we call the 2014 Permit change the modification, but there is no dispute regarding the Permit or its terms, just how the removal of the underfire combustion limit affected post-2014 pollution levels. Nothing in the Permit gave EES Coke an unlimited license to pollute. *Cf.* 2014 Permit, PageID.1391 ("Approval of this permit does not exempt the permittee from complying with . . . the Federal Clean Air Act."). Nor did EGLE's analysis in 2014 somehow authorize EES Coke's later, larger pollution increase.

3

flawed to be useful. First, it relies on the assumption that the amount of COG remains the same across each scenario. Mourad Declaration, PageID.1367-68 ("*For the same amount of COG that has to be processed* at the battery . . . any increase in SO$_2$ emissions at the underfire is necessarily associated with an equal decrease at the flare, and the sum for the unit is the same.") (emphasis added). Second, it ignores the fact that COG combustion at the battery would be affected by sales to off-site sources like U.S. Steel, the River Rouge power plant, and others. Galinsky Dec. ¶19. Finally, it ignores the critical fact that burning COG at underfire yields more COG because it is a byproduct of the coking process. *Id.* ¶12.

For that reason, limiting underfire combustion affects how much COG there is to combust. EES Coke's data shows that in 2018 the company burned more than 4 million MMBtu of COG at underfire. Galinsky Dec. ¶14. If the 2.85 million MMBtu limit had been in place, not only would emissions at underfire have been reduced by 573 tons, but the battery would have produced about 30% less COG. *Id.* ¶15. Overall SO$_2$ emissions from the battery's COG would thus be reduced by more than 1,000 tons. *Id.* ¶14-17. EES Coke's claim that emissions would be the same with or without the permit change rests on the incorrect assumption that the battery would have produced and processed the same amount of COG in both scenarios. *Id*.

In short, removing the underfire limit allowed the battery to run more and

produce more COG, making much of the increase related to the permit change. EES Coke's zero-sum game metaphor simply ignores these effects. And while U.S. Steel's reduced demand meant more COG stayed at the battery, the pollution increases would have been significantly smaller without the permit change. *See DTE Energy*, 845 F.3d at 740 (source cannot prove pollution increase is unrelated to change where change enables plant to run more). This satisfies the United States' burden to show that the change caused a qualifying pollution increase, and means EES Coke cannot meet its burden to exclude emissions sufficient to avoid liability.

### 2. The battery's pollution exceeded what it was capable of accommodating during the baseline period

There is no dispute that the battery's pollution has exceeded what EES Coke told EGLE during permitting was the $SO_2$ level it could accommodate during the baseline. EES Coke now argues that it could accommodate whatever $SO_2$ pollution it produces, essentially inviting the Court to read the capable of accommodating prong out of the demand growth exemption. There is no basis to do so.

During the permitting process, EES Coke described what it could have accommodated in two ways. First, it said it could have accommodated 3,097.5 tons of $SO_2$ per year during the baseline. U.S. Br., PageID.89. It then added that it could accommodate more, based on EGLE guidance allowing a source to extrapolate

5

from its highest month of emissions, but had not needed to in the application.[2] Galinsky Dec. ¶27-28. But the battery's actual pollution exceeded *both* potential capability levels. *Id*. ¶31. Nothing in the Permit record provides a capable of accommodating level high enough to meet the company's actual emissions.[3] *Id*.

That leaves the company no choice but to argue that it could have accommodated any emissions level, pointing to the fact that the flare is designed to be able to burn all COG produced. *See* Coke Br., PageID.963-64. Such an argument goes well beyond what Michigan allows, as EES Coke recognized in its Permit application. Michigan PSD Workbook, PageID.2392; Permit Application, PageID.1032 (describing one-month extrapolation as "an accepted method" and "appropriate for this project"). For good reason. Burning all COG at the flare fundamentally changes the nature of the battery; its purpose is producing coke, not flaring gas. Indeed, now that the battery burns only COG, sending all gas to the

---

[2] EES Coke accuses the government of ignoring this aspect of the Permit application in its original brief, but, as stated in the text, it provides no help to the company. *See* Coke Br., PageID.962-63.

[3] EES Coke also argues, incorrectly, that EPA is treating "projections" in its Permit application as binding limits. Coke Br., PageID.960. The United States does not contend that the projection or capable of accommodating amounts in the application should be binding limits. But as noted in the text and our prior brief (PageID.89), EES Coke has reported to EGLE what it could accommodate during the baseline. It should not be allowed to walk away from that statement now. *See* Ex. 2, *WildEarth Guardians v. Lamar Utilities Bd.*, No. 1:09-cv-02974-DME-BNB, at *7 (D. Colo. Mar. 21, 2013) (concluding that company's emissions estimate to permitting agency cannot later be disregarded; agency "was entitled to rely, and did rely, on that representation to make permitting decisions.").

flare would force the battery to stop operating altogether. Galinsky Dec. ¶25. EES Coke cannot practically send all COG to the flare. Notably, the company never made this flare argument to Michigan during the permitting process. *Id*. ¶22.

EES Coke accuses EPA of mounting a belated, collateral attack on the Permit. In fact, it is EES Coke that now seeks to rewrite its own Permit application and Michigan guidance. But it cannot erase the fact that its actual emissions have exceeded any defensible estimate of what it could have accommodated during the baseline, making the demand growth exemption unavailable.

## II. EES Coke Failed To Comply With Reporting Rules

EES Coke concedes that it did not submit the emissions report required by the regulations, but maintains that it was excused from doing so. There is no dispute of fact, just a matter of interpreting the rules. They do not give EGLE discretion to excuse sources from reporting, contrary to EES Coke's argument.

## CONCLUSION

The United States requests that the Court grant the motion for summary judgment.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*s/Thomas A. Benson*
THOMAS A. BENSON (Mass. # 660308)

7

*OF COUNSEL*
CHRISTOPHER GRUBB
JUSTIN BERCHIOLLI
Associate Regional Counsel
U.S. EPA Region 5
Chicago, IL
77 W. Jackson Blvd.

TERESA DYKES
Air Enforcement Division
U.S. EPA
1200 Pennsylvania Ave. NW
Washington D.C. 20460

SAMANTHA M. RICCI (Cal. # 324517)
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-5261
thomas.benson@usdoj.gov

*LOCAL COUNSEL*:
DAWN N. ISON
United States Attorney
Eastern District of Michigan

Kevin R. Erskine (P69120)
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
Telephone: (313) 226-9610
Email: kevin.erskine@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 27, 2022, I electronically filed the foregoing pleading using the CM/ECF system which will send notice of electronic filing to all counsel of record.

                                    *s/ Thomas A. Benson*
                                    Thomas A. Benson