UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,                              Case No. 22-11191
                      Plaintiff,
v.                                          Gershwin A. Drain
                                            United States District Judge
EES COKE BATTERY, LLC;
DTE ENERGY SERVICES, INC.;                  Curtis Ivy, Jr.
DTE ENERGY CO.; DTE                         United States Magistrate Judge
ENERGY RESOURCES, LLC,
                      Defendants.
_____/

## ORDER DENYING WITHOUT PREJUDICE
## MOTION TO COMPEL (ECF No. 86)

The United States' April 5, 2024, motion to compel (ECF No. 86) was

referred to the undersigned (ECF No. 87).  The United States sues EES Coke

Battery, LLC ("EES Coke") for violation of the Clean Air Act at a facility it

operates in River Rouge, Michigan, the "Coke Oven Battery."  This facility emits

sulfur dioxide pollution into the air.  In 2014, EES Coke was given a permit from

the State of Michigan lifting the limit on sulfur dioxide emissions.  EES Coke

stated that doing so would not result in a significant increase in emissions.  The

United States says it did result in significantly increased emissions, and for that

and other reasons, it brings this lawsuit.  (ECF No. 91).

The United States moved to compel responses to its third set of interrogatories.  (ECF No. 86).  The parties agreed to limit interrogatories to no more than 40 instead of the standard 25 set forth in Fed. R. Civ. P. 33(a)(1).  EES Coke argues that because many interrogatories in the second set contained multiple, unrelated subparts, Plaintiff has exceeded the number of allowed interrogatories, so it need not respond to the third set.  EES Coke brings other arguments against the motion to compel that are discussed more fully below, such as that some interrogatories seek information about its parent companies.  (ECF No. 88).  The United States argues that EES Coke waived its objection to numerosity, the interrogatory subparts are sufficiently connected to the main interrogatory to each count as one, and that EES Coke can obtain information from its parent companies.

## A.    Waiver

In response to six interrogatories included in the United States' second set of interrogatories (numbers 20, 23, 24, 26, 27, and 28), EES Coke objected on the ground that each included discrete subparts that should be counted as separate interrogatories.  EES Coke concluded that Plaintiff served 43 interrogatories in the first and second sets combined.  Subject to those objections, EES Coke substantively responded to each.  Because it did so, the United States contends that

it waived its numerosity objections as to the second set of interrogatories.  (ECF No. 86, PageID.3614-15).

The government cites U*nited States ex rel. Adams v. Remain at Home Senior Care, LLC*, 2022 WL 168783 (D.C.S. Jan. 19, 2022), in support. There, the plaintiff objected to the first set of interrogatories, asserting that the subparts of some interrogatories were discrete and should be counted as separate interrogatories.  By the plaintiff's count, the interrogatories exceeding 25.  Despite the objections, the plaintiff responded to the interrogatories in substance.  *See id.* at case No. 17-01493, D.S.C. ECF No. 201, Page 5 of 5.  Then, a second set of interrogatories were served which the plaintiff refused to answer because of the numerosity issue.  The court, without discussion, decided that the plaintiff waived its objections to the first set by answering them, but did not waive the issue as to the second set.  *Id.* at *3.

EES Coke asserts that *Adams* actually supports its position that answering interrogatories subject to its objections does not waive the objections.  The *Adams* court cited cases after its decision that objections were waived by answering the interrogatories.  Both cases held that answering some interrogatories and objecting to others waived the objection that interrogatories exceeded the allowed number. *See Romanyk Consulting Corp. v. EBA Ernest Bland Assocs., P.C.*, 2013 WL

3

3280030, at *6 (D. Md. June 26, 2013); *Allavherdi v. Regents of Univ. of N.M.*, 228 F.R.D. 696, 698 (D.N.M. 2005).  EES Coke did not answer some and to object to some; it answered all and objected to all.

The effect of objecting to interrogatories but answering them subject to the objection is unclear.  Some courts, like *Adams*, take the view that answering an interrogatory subject to an objection amounts to a waiver of the objection.  *See Wolt v. Embankscape Equip., LLC*, 2024 WL 1096563, at *2 (S.D. Tex. Mar. 13, 2024); *Gov't Emps. Ins. Co. v. Clear Vision Windshield Repair, LLC*, 2017 WL 1438426, at *5 (M.D. Fla. Apr. 24, 2017) ("Movants object to the use of the qualifier 'subject to and without waiving these objections' in each of the interrogatory answers.  Courts, including this one, have explained that producing documents 'notwithstanding' objections preserves nothing and wastes the time and resources of the parties and the court.") (citation omitted).  The reasoning behind these decisions is the difficulty of construing an answer that is subject to an objection.  For instance, if a party objects to an interrogatory as vague, yet answers the interrogatory in full, it leaves open whether the responding party did not disclose all responsive information, or is reading the interrogatory in a limited way different from the drafter's view.  But this lack of clarity is nonexistent here where EES Coke objected on the ground of numerosity but still answered.  Neither

4

Plaintiff nor the Court is left to guess at whether EES Coke withheld some information or is reading the interrogatory differently based on that objection.

Other courts take a different approach considering both the response and the objection when the objection is clear and specific. *See Craftwood Lumber Co. v. Essedant, Inc.*, 2017 WL 11570800, at *3 (N.D. Ill. Mar. 10, 2017) ("Answering subject to an objection is permissible in this jurisdiction so long as the party lodges a specific objection and makes clear any limitations the responder has subscribed to the interrogatory in responding."); *Norton v. Knapheide Equip. Co.*, 2019 WL 3082631, at *1 (E.D. Mo. July 15, 2019) ("this Court has repeatedly allowed a defendant to both object to and answer an interrogatory under Rule 33(b)(3)."); *Owners Ins. Co. v. KW Real Est. Ventures*, 2020 WL 7480939, at *1 (W.D. Tenn. Dec. 18, 2020) ("To the extent that Plaintiff answered further, the response was only to direct Defendant to the response to request for admission number 14 (interrogatories 5, 6, and 19) or to state that the answer is 'none' (interrogatory 4). This does not convert the objection into a waiver any more than answering an admission in part constitutes a full admission."). What matters is the clarity of the objection or response. The responses EES Coke provided subject to the numerosity objection do not lack clarity or completeness, so the concerns raised by some courts are not considerations here.

5

Also pertinent to this discussion is the Court's broad discretion in discovery. "[A] court has broad discretion over discovery matters, *Trepel v. Roadway Express*, *Inc.*, 194 F.3d 708 (6th Cir. 1999), and in deciding discovery disputes, a magistrate judge is entitled to that same broad discretion." *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 704 (E.D. Mich. 2017). EES Coke explains that it chose to respond to all the interrogatories in the second set rather than bringing a discovery dispute over numerosity to the Court. It would be inefficient or inequitable to punish a party for answering discovery subject to a numerosity objection rather than digging in its heels and requiring court intervention. So the Court will not deem objections waived and will look to the second set of interrogatories to determine whether the contested requests contain discrete subparts as EES Coke asserts.

## B.     Numerosity

Federal Rule of Civil Procedure 33(a)(1) provides that parties may serve no more than 25 interrogatories, including all discrete subparts, unless otherwise stipulated. The parties here agreed to serve no more than 40 interrogatories each, including all discrete subparts. EES Coke contends that some of the United States' second set of interrogatories contained multiple, discrete subparts counting as more

6

than one interrogatory, and exceeded 40 interrogatories between the first and second sets combined.

"Discrete subparts of an interrogatory are questions which ask for discrete pieces of information." *Nolan L.L.C. v. TDC Int'l Corp.*, 2007 WL 3408584, at *3 (E.D. Mich. Nov. 15, 2007). If, however, the subparts to an interrogatory are necessarily related to the "primary question," the subparts should be counted as one interrogatory rather than as multiple interrogatories. *Harhara v. Norville*, 2007 WL 2897845 (E.D. Mich. Sept. 25, 2007). The Advisory Committee to the Federal Rules provided an example of a non-discrete interrogatory and subparts: "a question asking about communications of a particular type" even if "it requests that the time, place, persons present, and contents be stated separately for each such communication." Advisory Committee Note, Fed. R. Civ. P. 33 (1993 Amendments). In other words, "an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question." § 2168.1 Number of Interrogatories, 8B Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.). For example, in *Harhara v. Norville*, 2007 WL 2897845, at *1 n.3 (E.D. Mich. Sept. 25, 2007), the district court found that "subparts asking about (a) the nature of the employment, (b) the name and address of the employer, (c) the time period of employment and (d) the reason for separation with employment"

7

were sufficiently related to the interrogatory's primary question of whether the

defendant was previously employed to constitute a single interrogatory under Rule

33(a).  The court made the same finding for an "interrogatory ask[ing] whether [the

defendant] was taking prescription medication at the time of the accident, with

subparts requesting (a) a description of the medication, (b) the name, address and

telephone number of the prescribing doctor, (c) the most recent occasion prior to

the accident that such medication was taken and (d) [the defendant]'s opinion

regarding whether the medication affected his ability to operate a motor vehicle."

*Id.*

Interrogatories 20, 23, 24, 26, 27, and 28 from the second set are challenged

as containing discrete subparts counting as more than one interrogatory each.  The

interrogatories are quoted below but broken up by sentences for visual clarity.

1.    Interrogatory 20

This interrogatory reads:

> Identify each Emission Point by name and identifying
> number (if any) at which a COG SO2 emissions factor is
> used by EES Coke to calculate S02 emissions.
>
> Identify the COG SO2 emissions factor, in pounds per
> million British thermal unit and pounds per standard
> cubic foot, and the time period applied to the emission
> factor, for the period since the 2014 Permit (November
> 2014 to the present).

Identify the source of the emission factor(s) provided and describe any calculations or assumptions made using such emission factor(s) to estimate the emissions from the Emission Points identified, including how EES Coke determined emissions during periods of monitory downtime and malfunction.

(ECF No. 86-6, PageID.3682).

The Court finds two discrete topics here. The first is the request for EES Coke to identify each Emission Point by name and number. The next is about emissions factors at the Emission Points: identify the emissions factors since 2014. Though related, identifying an emission point is not the same as identifying emissions factors. So, there are two interrogatories. The final sentence in Interrogatory 20 asks for details about the information gathered in response to the second sentence—the source of the factors provided and descriptions of calculations or assumptions made using the emission factors, including how EES Coke determined emissions during downtime and malfunction. This final subpart is subsumed in the emissions factor subpart and counts as part of the emissions factor interrogatory, not a separate interrogatory.

2.    Interrogatory 23

For the underfire combustion stack and the Flare at the Facility, and for the Facility as whole, identify the total amount of NOx emissions and the NOX emissions factor (pounds NOx per million British thermal unit of COG

9

> and/or pounds NOx per standard cubic foot of COG), by
> month and calendar year, for the period since the
> 2014 Permit (November 2014 to the present).
>
> Identify the source of information provided and describe
> any calculations or assumptions made, including how
> EES Coke determined emissions during periods of
> monitor downtime and malfunction.

(ECF No. 86-6, PageID.3685).

EES Coke argues that each sentence is a separate interrogatory.  The Court disagrees.  Asking for the source of the information provided in response to the topic question is like the questions in *Harhara*; Plaintiff asks for the amount of emissions from a select period in time, and then for the source of that emissions data, how the data was determined or any assumptions made.  This is one interrogatory.

3.    Interrogatory 24

In this interrogatory, the United States requests:

> Calculate the amount of saleable coke which the Facility
> could produce in a year if the Battery fired only
> 2,850,000 mmBtu of COG for underfire heat.
>
> Identify both the lowest and highest amount of COG that
> the Battery could produce with the input of 2,850,000
> mmBtu of COG at underfire as the sole underfire heat
> source.
>
> For each instance, identify the amount of coal that would
> need to be charged for each amount calculated, and the

amount of COG which would be expected to be
produced, as ranges if necessary to be accurate.

Identify the source of the information provided and
describe any of the calculations or assumptions made,
including how EES Coke determined the amount of coal
that would need to be charged for each amount
calculated.

(ECF No. 86-6, PageID.3688).

The government argues that this is all one interrogatory. It explains that the
primary question is what would happen if the battery was limited to 2,850,000
mmbtu of COG as it was before the new permit was issued in 2014. It says the
subparts are necessary inputs and outputs of calculating the total production of
saleable coke. The amount of coal charged is the initial input in the calculation.
The amount of saleable coke depends on the amount of coal charged. And the
range of COG (a byproduct of coke production) produced depends on the input of
COG at underfire. (ECF No. 86, PageID.3618-19). Thus, the parts of this
interrogatory form one whole, according to the government. EES Coke responds
that the fact that the United States needs certain information to input into its expert
calculations aside, this interrogatory asks multiple questions. (ECF No. 88,
PageID.3748-49).

Neither party's arguments do much to clarify the issue for the Court. The
Court is not well-versed enough in coke production to understand the relationship

between coal, COG, and coke.  EES Coke did not explain why these things are not sufficiently related in its response brief.

Because this interrogatory is about the hypothetical of limiting the battery to 2,850,00 mmbtu of COG, the Court considers all subparts to constitute a single interrogatory.  This includes the last two sentences seeking details about the information adduced in response to the first two sentences.  Again, "an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question."  § 2168.1 Number of Interrogatories, 8B Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.).  Interrogatory subparts asking for the source of the information gathered for the main topic question are part of the same interrogatory.

    4.    Interrogatory 26

> Identify the internal business projections EES Coke used to calculate the business projection of 1.42 million TPY coal charge for the Facility for the 2014 Permit application.
>
> Identify the internal projections of the Facility's coke production and coke utilization for the period 2012-2014, prior to the 2014 Permit application.
>
> Identify the source of the information provided and describe any calculations or assumptions made, including how EES Coke formed the basis for each of the projections.

(ECF No. 86-6, PageID.3692).

EES Coke argues that it "was required to undertake efforts separate and apart from the information sought by each of these subparts."  (ECF No. 88, PageID.3749).  The Court agrees to an extent and finds two distinct interrogatories: one asking for the projections for the 2014 permit and the other for projections for 2012-2014 before the permit application.  The final subpart asking for the source of information and the how EES Coke formed the basis of the projections does not count as a separate interrogatory, so the Court counts two interrogatories here.

5.    Interrogatory 27

Here, the United States asks:

> Identify all monitored heat content data used at the Facility to measure the heat content (Btu/cubic foot or similar) and the flow rate (cubic feet per min or similar) of COG.
>
> Describe where the monitors are located, types of monitors used, and identify the dates of the operation of the monitor, for the period since the 2014 Permit (November 2014 to the present).

(ECF No. 86-6, PageID.3694).

In the first sentence, EES Coke says there are two discrete topics—(1) identify monitored heat content data used to measure heat content and (2) identify monitored heat content data used to measure flow rate.  It says heat content data is

13

different from flow rate data, and the monitor locations, types, and dates of

operation are not subsumed in the questions for heat and flow rate data.  (ECF No.

88, PageID.3750).  But looking at EES Coke's response (ECF Nos. 86-6,

PageID.3694-95), it is not clear that the heat content and flow rate are such

separate measurements unconnected to heat content as to constitute two separate

and distinct interrogatories.  And as has been the finding so far, the second part

asking for details related specifically to the first part constitutes a single

interrogatory.  The Court finds one interrogatory here.

      6.     Interrogatory 28

Interrogatory 28 is about the physical facility itself.  It asks EES Coke to

> [i]dentify the property boundary of the EES Coke Battery
> Facility, including what You determined to be the
> boundary line for air monitoring purposes.
>
> Describe the property lines, the square footage, and any
> demarcations separating the EES Coke property from any
> adjacent property lines.
>
> Identify the source of information for this determination,
> including any documents.

(ECF No. 86-6, PageID.3696).  EES Coke sees three interrogatories, the Court sees

one.

The first sentence asks for building property boundary, *including* what EES

Coke determines to be boundary line for air monitoring purposes.  Having asked

14

for property and air boundary lines, it makes sense to get the details—square footage, demarcations, etc., including the source of the information used to answer this interrogatory.  All three sentences or requests comprise a single interrogatory on a single topic.

In sum, of the six challenged interrogatories in the second set, the Court finds that there are eight interrogatories, which leads to a total of <u>30 interrogatories</u> in the first and second sets combined.  The third set has 12 interrogatories, two over the agreed 40-interrogatory limit.

The Court will reserve a decision on whether EES Coke must answer some or all of the interrogatories in the third set until after the parties have conferred. The motion to compel is **DENIED WITHOUT PREJUDICE**.  The Court will allow the United States **three weeks from the date of this Order** to evaluate its third set of interrogatories and reduce them by two.  Before the government evaluates its third set and the parties confer, the Court has reviewed the remaining arguments about these interrogatories, below, which may be helpful in conference discussions.

## C.   Interrogatories Directed at Parent Companies

EES Coke argues that some interrogatories in the third set seek information from or about its parent companies.  For example, Interrogatory 29 asks for a

description of the approval process for the 2014 permit within EES Coke and within the DTE corporate structure. Interrogatory 32 asks for the identity of managers and members of DTE Coke Holdings, LLC, DTE Energy Resources, LLC, and DTE Energy Corporate Services, LLC. None of these entities are EES Coke; rather, they are parent companies. Interrogatory 33 seeks the identity of directors and officers of EES Coke and the same DTE companies listed in Interrogatory 32.

Similarly, other interrogatories ask for the identity of individuals "within the DTE Energy corporate structure," which necessarily would require EES Coke to identify persons who are employed by its parent company or other subsidiaries. For instance, Interrogatory No. 30 lists many names and asks EES Coke to identify the employer(s) for each individual. (ECF No. 86-2, PageID.3634-35). Int. 34 asks for the identity of those who made "high-level operational decision" and "day-to-day management decisions" from 2012 to the present for the Facility. (ECF No. 86-2, PageID.3641). EES Coke says this interrogatory asks for information about persons across various DTE entities, not EES Coke. (ECF No. 88, PageID.3755).

EES Coke makes a good point that it should not be compelled to make sworn statements on behalf of parent companies, certainly not now that the

16

companies are co-defendants.  But, EES Coke must respond to these

interrogatories for individuals who worked or still work for EES Coke (even if they

also worked or work for a DTE parent company), if these or similar interrogatories

remain after the United States' evaluation of the third set.  EES Coke need not

respond as to individuals who are not employees of EES Coke.  Those

interrogatories can go to the newly added DTE defendants.  The Court notes,

however, that EES Coke has provided organizational charts that may already

answer these interrogatories.

**D.      Contention Interrogatories 36-38 and 40**

EES Coke argues that Interrogatories 36-38 and 40 are objectionable for

reasons beyond the numerosity issue.  The Court will not thoroughly address the

arguments raised at ECF No. 88, PageID.3753 in the event that the United States

determines some of these interrogatories should be cut.  Briefly, though, the Court

notes that the relevance of man-hours spent working on the permit application

(Interrogatory 37) and the need to ask for information already produced

(Interrogatory 38) appear weak.  Interrogatory 40 asks for a damages assessment,

but if expert discovery answers this, then Interrogatory 40 might be one the United

States can remove from the third set.  Finally, the parties should confer on a

redrafting of Interrogatory 36, should the United States intend to keep this

17

interrogatory.  EES Coke responded that this interrogatory is based on a faulty

assumption.  EES Coke need not respond to this interrogatory based on a faulty

assumption, so the United States should consider redrafting.

After the United States reviews its third set of interrogatories and the parties

have conferred, if disputes remain the parties are directed to contact chambers to

schedule a status conference.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are

required to file any objections within 14 days of service as provided for in Federal

Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as

error any defect in this Order to which timely objection was not made.  Fed. R.

Civ. P. 72(a).  Any objections are required to specify the part of the Order to which

the party objects and state the basis of the objection.  When an objection is filed to

a magistrate judge's ruling on a non-dispositive motion, the ruling remains in

effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich.

Local Rule 72.2.


Date: July 1, 2024                          s/Curtis Ivy, Jr.
                                            Curtis Ivy, Jr.
                                            United States Magistrate Judge

18