UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                              Case No. 22-11191
                        U.S. DISTRICT COURT JUDGE
                              GERSHWIN A. DRAIN

and

SIERRA CLUB and
CITY OF RIVER ROUGE,

      Plaintiff-Intervenors,

v.

EES COKE BATTERY, LLC, *et al.*,

      Defendants.

_____/

**OPINION AND ORDER DENYING WITHOUT PREJUDICE
DEFENDANTS' MOTION TO APPROVE AMOUNT AND TERMS OF
SUPERSEDEAS BOND [#419] AND DENYING DEFENDANTS' MOTION
TO STAY ENFORCEMENT OF THE JUDGMENT PENDING APPEAL
[#421]**

## I.    INTRODUCTION

Presently before the Court are the following motions: (1) Defendants' Motion

to Approve Amount and Terms of Supersedeas Bond [#419], and (2) Defendants'
Motion to Stay Enforcement of the Judgment Pending Appeal [#421]. Upon review
of the parties' submissions, the Court concludes that oral argument will not aid in
the disposition of the motions, and thus they will be decided on the briefs. *See* E.D.
Mich. L.R. 7.1(f)(2). For the reasons that follow, Defendants' Motion to Approve
Amount and Terms of Supersedeas Bond [#419] is DENIED WITHOUT
PREJUDICE, and Defendants' Motion to Stay Enforcement of the Judgment
Pending Appeal [#421] is DENIED.

## II.     **BACKGROUND**

The Government initiated the present action against Defendant EES Coke
Battery, LLC ("EES Coke") on June 1, 2022. It alleged that EES Coke violated the
Clean Air Act's New Source Review program ("NSR") by (1) undertaking a "major
modification" at the EES Coke Facility ("the Facility") without first complying with
NSR permitting requirements, and (2) failing to comply with NSR's "reasonable
possibility" reporting requirements. The Government later amended its complaint to
add DTE Energy Services, Inc. ("DTEES"), DTE Energy Resources, LLC
("DTEER"), and DTE Energy Company ("DTEEC") (collectively, "the DTE
Defendants") to this case as defendants, alleging that they are also liable for the
Clean Air Act violations as "operators" of the Facility. Sierra Club and the City of
River Rouge moved to intervene as plaintiffs in this case, and the Court granted their

2

motions.

At summary judgment, the Court found EES Coke liable for the alleged Clean Air Act violations, but determined that genuine issues of material fact existed with respect to the DTE Defendants' liability and the appropriate remedy. The Court held a bench trial on those issues from September 15, 2025 to September 29, 2025. Following the trial, the Court issued its findings of fact and conclusions of law on February 17, 2026. The Court found that the Government had proven by a preponderance of the evidence that the DTE Defendants are "operators" of the Facility and, thus, liable for the Clean Air Act violations alongside EES Coke. The Court's final judgment orders Defendants to (1) pay civil penalties in the amount of $100,000,001.00, (2) come into compliance with the Clean Air Act by applying for and obtaining the requisite NSR permits within 250 days of the Court's entry of judgment, and (3) form a Community Quality Action Committee and provide it with $20 million in funding for community air quality improvement projects.

On March 25, 2026, Defendants filed a notice of appeal. Pursuant to Federal Rule of Civil Procedure 62, Defendants also moved for an order staying enforcement of the monetary and injunctive relief ordered by the Court, as well as an order approving the amount and terms of a supersedeas bond. Defendants represent that they plan to execute a supersedeas bond between DTEEC and Fidelity and Deposit Company of Maryland and Zurich American Insurance Company in the amount of

$123,500,001.00. According to Defendants, this amount covers the full amount of the civil penalties, the monetary component of the injunctive relief (i.e., the $20 million Defendants are ordered to provide in funding to the Community Quality Action Committee), and roughly one year of post-judgment interest on the civil penalties.

### III. LAW AND ANALYSIS

#### A. Defendants' Request to Stay Enforcement of Civil Penalties and Monetary Component of Injunctive Relief

Defendants seek a stay of enforcement of the civil penalties and the monetary component of the injunctive relief. Federal Rule of Civil Procedure 62(b) permits a movant to obtain a stay of enforcement of a money judgment "by providing a bond or other security," and the stay "takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." Fed. R. Civ. P. 62(b). Rule 62(b) entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right. *See Arban v. West Publ'g Corp.*, 345 F.3d 390, 409 (6th Cir. 2003). "Although the Rule does not precisely define the amount and conditions of a supersedeas bond, it generally equals the entire judgment." *Seals v. Wayne Cnty. Emps.' Ret. Sys.*, No. 20-11272, 2024 WL 2271824, at *9 (E.D. Mich. May 20, 2024) (cleaned up).

Here, Defendants propose posting a supersedeas bond in the amount of $123,500,001.00 to stay enforcement of the civil penalties and the monetary

4

component of the injunctive relief. The proposed bond covers the full amount of the civil penalties, the $20 million Defendants are ordered to provide in funding to the Community Quality Action Committee, and approximately one year of post-judgment interest on the civil penalties. The Court is satisfied that the amount of the proposed bond adequately protects the Government's interest in recovering the civil penalties, and Sierra Club's interest in having Defendants fund the Community Quality Action Committee.

However, the Court is concerned that the proposed bond identifies only DTEEC as a principal, even though all Defendants are jointly and severally liable under the judgment. As Sierra Club notes in its response to Defendants' motion, if the Court's liability findings as to DTEEC are reversed on appeal, the enforceability of the bond could potentially be called into question. In their reply, Defendants acknowledge this concern and represent that they are willing to modify the bond to address it. Accordingly, the Court will approve the supersedeas bond only if it is revised to eliminate this defect. Defendants may do so by either (1) adding each of the other Defendants as co-principals on the bond, or (2) including a provision expressly obligating DTEEC to remain liable under the bond for the ultimate obligations of each of the other Defendants, regardless of the disposition of DTEEC's liability on appeal.

For these reasons, Defendants' motion for approval of the amount and terms

of the supersedeas bond, as well as the motion to stay as it relates to the civil penalties and monetary component of the injunctive relief, will be denied without prejudice. Upon revising the terms of the supersedeas bond in accordance with this order, Defendants may file a renewed motion for approval of the bond and to stay enforcement of the civil penalties and monetary component of the injunctive relief. To afford Defendants an opportunity to obtain and submit the revised bond, the Court will stay enforcement of the civil penalties and the monetary component of the injunctive relief for thirty days from the date of this order.

### B. Defendants' Request to Stay Enforcement of Injunctive Relief

Defendants also seek a stay of enforcement of the ordered injunctive relief, namely, that Defendants (1) come into compliance with the Clean Air Act by applying for and obtaining the requisite NSR permits within 250 days of the Court's entry of judgment, and (2) establish a Community Quality Action Committee.

Rule 62(d) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). A district court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *McKeon Prods., Inc. v. Honeywell Safety Prods. USA,*

*Inc.*, No. 95-cv-76322, 2021 WL 287729, at *3 (E.D. Mich. Jan. 28, 2021) (quoting

*Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)).

In deciding whether to issue a stay under Rule 62(d), courts consider the same factors analyzed when issuing injunctive relief: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Id.* (quoting *SEIU Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (per curiam)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

Beginning with the first factor, the Sixth Circuit has recognized that "a movant seeking a stay pending review on the merits of a district court's judgment will have greater difficulty in demonstrating a likelihood of success on the merits" than they would when appealing a preliminary injunction. *Id.* The movant must demonstrate that there is a "likelihood of reversal." *Id.* Defendants have not met that burden here. Their motion largely repackages arguments that this Court has already considered and rejected in resolving the merits of this case, and the fact that Defendants disagree with the Court's conclusions does not establish a likelihood of reversal. To hold otherwise would, in essence, allow every appeal from an adverse judgment to serve

7

as an automatic basis for delaying enforcement of the judgment.

Defendants suggest that, under *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991), a movant need only demonstrate "serious questions going to the merits" in order to obtain a stay. This argument, however, misconstrues *Griepentrog*. There, the Sixth Circuit recognized that "a movant need not always establish a high probability of success on the merits." *Id.* at 153. Rather, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay," and "[s]imply stated, more of one excuses less of the other." *Id.* The Sixth Circuit cautioned that this inversive relationship "is not without its limits," as "the movant is always required to demonstrate more than the mere 'possibility' of success on the merits." *Id.* Thus, when a movant makes a compelling showing that other interested parties will not suffer irreparable harm, the court may require something less than a strong likelihood of success on the merits. As set forth below, Defendants have not made such a showing, and thus their burden of showing a likelihood of success on the merits cannot be reduced under *Griepentrog*. Accordingly, this factor weighs against granting the stay requested by Defendants.[1]

---

[1] Even assuming *arguendo* that raising "serious questions going to the merits" would be sufficient to satisfy this factor, the Court finds that the balance of the remaining factors strongly weigh against granting a stay pending appeal.

Second, Defendants will not be irreparably harmed absent a stay. To merit a stay, the harm the movant will face "must be both certain and immediate, not speculative or theoretical." *See D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (cleaned up). The movant "bears a heavy burden and must demonstrate more than an unfounded fear of harm." *Smith v. State Farm Fire and Cas. Co.*, 737 F. Supp. 2d 702, 713 (E.D. Mich. 2010).

Defendants first argue that, absent a stay, EES Coke will likely be forced to wind down the Facility's operations because of the costs associated with installing pollution control technology. True, "[t]he impending loss or financial ruin of [a company's] business constitutes irreparable injury," as such a loss cannot be undone through monetary remedies. *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995). Such harm, however, is not certain nor immediate here.

For one, the Court's judgment does not require Defendants to install pollution control technology. Rather, it requires them to submit NSR permit applications for the Facility by November 1, 2026. Defendants represent that the appeal will likely be resolved by the end of December 2026 and that EGLE will likely issue a permit by July 2027 at the earliest. Any obligation to install pollution controls would arise only after the permits are issued, which, by Defendants' own representations, would likely occur after the Sixth Circuit has resolved the appeal. This timeline is

reinforced by David Smith's declaration, submitted in support of Defendants' motion to stay, which states:

> *Even if EES Coke obtains the necessary permits*, the cost of installing and operating pollution control technology that meets BACT/LAER requirements would likely render the EES Coke Battery unprofitable and force the facility to shut down permanently. . . . [T]he most likely outcome if Defendants do not prevail *on appeal* is that EES Coke will be forced to shut down the facility permanently.

ECF No. 421-1, PageID.28770 (emphasis added).

Moreover, even assuming *arguendo* that Defendants would be required to install pollution controls before the appeal is resolved, they have not shown that the resulting costs would force the Facility to cease operations. The Court's judgment requires *all* Defendants, not just EES Coke, to bring the Facility into compliance with NSR's permitting requirements. As set forth in the Court's findings of fact and conclusions of law, Defendants each—and collectively—have a substantial ability to pay, either through annual cash flow or debt. ECF No. 410, PageID.28633. The same is true with respect to Defendants' obligation to submit the permit applications themselves, which Defendants represent would cost between $150,000 to $200,000.

Defendants alternatively argue that, even if the Facility remains operational, they will incur compliance costs that cannot be recovered if the Court's judgment is ultimately reversed. In support of this position, Defendants rely on *National Institutes of Health v. American Public Health Association*, 145 S. Ct. 2658 (Mem.) (2025), where the Supreme Court observed that "while the loss of money is not

10

typically considered irreparable harm, that changes if the funds 'cannot be recouped' and are thus 'irrevocably expended.'" *Id.* (quoting *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010)). That case, however, is distinguishable from the present one. There, at issue was an injunction on the federal government's termination of various research-related grants. The Supreme Court observed that the Administrative Procedure Act's limited waiver on sovereign immunity does not empower federal district courts to adjudicate claims based on the research-related grants or to order relief designed to enforce any obligation to pay money pursuant to those grants.

Those circumstances are not present here. Defendants are private parties challenging a final judgment that requires compliance with certain injunctive relief. Defendants are not seeking to compel the Government to honor a funding obligation or otherwise provide monetary payments. Moreover, the Government's sovereign immunity under the Administrative Procedure Act is irrelevant here. Although Defendants will incur costs associated with preparing and submitting permit applications that they cannot later recoup if the judgment is reversed, the Sixth Circuit has long recognized that "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to establish irreparable harm. *Mich. Coal.*, 945 F.2d at 154.

Lastly, Defendants argue that they will suffer irreparable harm from the costs

11

related to establishing the Community Quality Action Committee. The Court disagrees. While, as Defendants suggest, EES Coke would need to commit multiple employees to devote significant hours on the project, this does not rise to the level of irreparable harm and are instead costs attendant to compliance with a court judgment. Moreover, Defendants have substantial ability to pay the costs associated with doing so. For these reasons, Defendants have not established irreparable harm, and thus this factor weighs against granting a stay.

The third factor, harm to other interested parties, also weighs against granting a stay. Defendants argue that neither the Government nor the Intervening Plaintiffs "can demonstrate that they will suffer any harm as a result of a temporary stay that would simply preserve the status quo while the Sixth Circuit considers Defendants' appeal." ECF No. 421, PageID.28763. The problem is, however, that the status quo itself is causing irreparable harm to the interested parties. As set forth in the Court's findings of fact and conclusions of law, the Facility's excess emissions have caused, and continue to cause, significant harm to surrounding communities and the public at large. For example, as one of Michigan's largest sources of $SO_2$ emissions, the Facility's excess emissions pose substantial health risks. Even very brief exposure to $SO_2$ can increase the risk of asthma attacks, exacerbate respiratory diseases, and cause other adverse health effects. Similarly, exposure to $PM_{2.5}$ can cause adverse health effects, including asthma attacks, strokes, elevated blood pressure,

Alzheimer's disease, certain cancers, and premature deaths. Granting a stay will delay implementation of the permit requirements necessary to bring the Facility into compliance with the Clean Air Act. A stay would cause substantial harm to others, and thus this factor weighs against granting the requested stay.

Finally, the public interest does not support granting a stay. Defendants argue that absent a stay, EES Coke will be forced to begin the process of shuttering the Facility, which would result in job losses and negative economic impacts in Michigan. As discussed above, however, the costs Defendants contend will drive the Facility to shutter are not imminent and will likely materialize after the Sixth Circuit resolves the appeal.

Moreover, given the significant harm the Facility's excess emissions have caused, and continue to cause, to the surrounding communities and the public at large, the public interest strongly favors denying the stay. The Sixth Circuit has recognized that, "[i]n enacting the Clean Air Act, Congress made a determination that the public interest required that substantial measures be taken to combat the deleterious effects of air pollution. . . . The district court's discretionary injunctive powers [are] therefore tempered by its obligation to carry out the congressional mandate contained in the Clean Air Act." *United States v. City of Painesville*, 644 F.2d 1186, 1193 (6th Cir. 1981). Granting a stay would contravene the commands of the Clean Air Act, which was enacted to protect the public interest. For these

reasons, the Court finds that, on balance, the *Griepentrog* factors do not support staying enforcement of the injunctive relief set forth in the Court's judgment.

In conclusion, Defendants' motion for approval of the amount and terms of its proposed supersedeas bond is denied without prejudice, and Defendants' motion to stay enforcement of the Court's judgment is denied. Upon revising the terms of the supersedeas bond in accordance with this order, Defendants may file a renewed motion for approval of the bond and to stay enforcement of the civil penalties and monetary component of the injunctive relief. To afford Defendants an opportunity to obtain and submit the revised bond, the Court will stay enforcement of the civil penalties and the monetary component of the injunctive relief for thirty days from the date of this order.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, Defendants' Motion to Approve Amount and Terms of Supersedeas Bond [#419] is DENIED WITHOUT PREJUDICE, and Defendants' Motion to Stay Enforcement of the Judgment Pending Appeal [#421] is DENIED.

SO ORDERED.

Dated: July 16, 2026                    /s/Gershwin A. Drain
                                        GERSHWIN A. DRAIN
                                        United States District Judge

14

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July
16, 2026, by electronic and/or ordinary mail.
<u>/s/ Marlena Williams</u>
Case Manager